UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DEREK HENDERSON | CIVIL ACTION NO. 21-2529 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LOWES HOME CENTERS, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 29) filed by Defendant, Lowes Home Centers, LLC ("Lowes"), seeking dismissal of all claims filed against them by Plaintiff, Derek Henderson ("Henderson"). This Motion is unopposed. For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

The present suit concerns the termination of Henderson from Lowes Store 428 in Shreveport, Louisiana in July 2020. See Record Document 1-2. As a result of his termination, Henderson filed an EEOC Charge on October 6, 2020. See id. On June 11, 2021, Henderson received a Dismissal and Notice of Rights from the EEOC. See id. Henderson then filed suit in this Court on August 16, 2021.

The events leading up this suit are as follows. Henderson, an African American male, began working as a delivery driver for Lowes in September of 2018. See Record Document 29-8 at 1. At some point after the start of his employment, Henderson began working under supervisor Frank Messina ("Messina"), a then-sixty-year-old Caucasian male. See id. at 2. Throughout his EEOC charge and subsequent deposition testimony, Henderson identified Messina as the subject of most of his complaints, labelling him "arrogant" and stating that Messina "had something against" Henderson. See id.

The first incident between Henderson and Messina occurred in January 2019, when Henderson went to a customer's house to install a refrigerator. See id. Ultimately, Henderson left the customer's house without installing the refrigerator, and when Messina asked Henderson why he did not complete the job, Henderson "responded defensively" about a lack of training. See id. Messina reported the incident to Earl Howard ("Howard"), the assistant store manager, who told Henderson that he must do his job or his services would no longer be needed. See id. Henderson understood this conversation as a termination of employment and walked out of the store. See id. Henderson then filed a complaint with Lowes' Ethics Line for "wrongful termination." See id. at 3. Henderson cited "retaliation of his report of [a prior] workplace injury" as the reason for the wrongful termination. See id. Notably, Henderson did not report any race or age discrimination complaints at this time. See id. After Lowes investigated the incident, Henderson was told to return to work, which he did. See id.

The next incident between Henderson and store management occurred in February of 2019, when a customer called to complain that Henderson had failed to hook up the ice machine on her refrigerator. See id. An assistant store manager, Michael Leon-Guerrero, called a meeting with Henderson to review his job description, which Messina attended. See id. Management testified that, at this meeting, Henderson "was insubordinate, refused to listen, and became angry." See id. at 4. Messina also stated that "he had received similar reactions and responses from [Henderson] when trying to provide feedback in the past." See id. On the day after the meeting with management, Henderson filed another complaint with the Ethics Line against Messina and others, describing their "bad attitude" towards Henderson and the "hostile work environment" they

2

created. See id. Henderson did not report any race or age discrimination complaints at this time. See id. Lowes again investigated the complaint, but did not find any wrongdoing on management's part. See id.

In August of 2019, Henderson filed a third complaint with the Ethics Line concerning Messina, in which he asserted that Messina was constantly criticizing him, while treating other employees more "fairly or kindly." See id. Again, Henderson did not report any race or age discrimination complaints at this time. See id. Lowes investigated Henderson's complaint and discovered that several members of management found Henderson to have "a challenging attitude, often refusing to perform certain job duties, despite numerous counseling opportunities." See id. at 5.

In October of 2019, another incident occurred whereby Mary Clark ("Clark"), an Operations ASM, reported that Henderson told Clark he had yelled at the Overnight Support Manager, Diana White ("White"), threw a marker at her, and then later apologized. See id. White reported that Henderson "refused to assist her (saying, 'I am going to quit this place') and later had a bad attitude, yelled profanities, and threw freight into the cart." See id.

Henderson filed his fourth complaint with the Ethics Line in March of 2020, asserting that Messina failed to assist him promptly on a difficult refrigerator installation. See id. at 5–6. Henderson asserted that Messina gave him a difficult job assignment in retaliation, but Henderson did not report any race or age discrimination complaints at this time. See id. at 6.

In the months leading up to his termination, Henderson experienced two more confrontations with management. See id. First, Henderson came to the store to speak

with Messina and another employee about wanting more hours. See id. When management suggested Henderson pick up shifts at the nearby Bossier location, Henderson understood this as a suggestion that he should transfer. See id. Second, Henderson came to the store and spoke with Store Manager, Ike McCullars ("McCullars"), Operations Manager, Rebecca Williams ("Williams"), and another party. See id. at 7. During this conversation, Williams testified that Henderson "pointed at McCullars angrily, made threatening comments, and raised his voice." See id. Williams and McCullars both found Henderson's behavior unacceptable and thereafter requested approval from Associate Relations to terminate Henderson. See id. Osledire Robinson in Associate Relations approved the termination in July of 2020.

In the present Motion for Summary Judgment, Lowes argues that all of Henderson's claims must be dismissed, primarily because Lowes came forward with a legitimate, non-discriminatory reason for Henderson's termination. See Record Document 29 at 1. Lowes argues that even if Henderson established a *prima facie* case of race or age-based discrimination, he failed to present any evidence of pretext. See id. Further, to the extent Henderson brings a workers' compensation retaliation claim, Lowes argues that such claim is prescribed. See id. at 2. As noted above, Henderson did not file an opposition to the Motion for Summary Judgment, which was filed in September of 2022. See id.

## LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is

4

entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2. Here, Henderson has failed to oppose Lowes' Motion for Summary Judgment, including the Statement of Material Facts filed by Lowes therewith. See Record Document 29-9. Therefore, the material facts submitted by Lowes have not been controverted and are hereby deemed admitted.

### B. Analysis

#### a. Race discrimination claim

Lowes first argues that Henderson's race discrimination claim must be dismissed because even if Henderson could establish a *prima facie* case of discrimination, Lowes has come forward with a legitimate, non-discriminatory reason for his termination. See Record Document 29-8 at 9. Specifically, Lowes asserts that Henderson was fired because "he displayed a negative and hostile attitude throughout his employment, including in a meeting with his Store Manager and Operations Manager immediately prior to his termination." See id. at 10. Further, Lowes states that "[d]uring his nearly two-year employment, Lowes received complaints from employees and managers alike about Plaintiff's attitude, temperament, and unwillingness to accept feedback about his job duties and performance." See id.

Under the framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), a claim of race-discrimination in the workplace has three basic evidentiary steps: (1) the plaintiff establishes an initial *prima facie* case of discrimination; (2) the employer articulates a legitimate, non-discriminatory reason for the employment decision; and (3) the plaintiff must rebut the employer's reason by producing evidence of pretext. Notably, when the employer comes forward with a legitimate reason for the employment decision, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory [ ] purpose." McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007). The burden of proving discrimination remains at all times with the plaintiff. See Mary's Honor Center v. Hicks, 509 U.S. 502, 513–14, 113 S. Ct. 2742 (1993).

Lowes argues that Henderson's "unprofessional behavior and hostile attitude is a legitimate non-discriminatory reason for Lowes decision to terminate" his employment. See id. This Court agrees and finds that Lowes has met its burden of coming forward with a legitimate, non-discriminatory reason for Henderson's termination. See Salazar v. Lubbock Cnty. Hosp. Dist., 982 F.3d 386 (5th Cir. 2020) (affirming summary judgment where plaintiff's poor performance was employer's legitimate non-discriminatory reason for discharge); Schakleford v. Deloitte & Touche, LLP, 190 F.3d 398, 408 (5th Cir. 1999) ("Shackelford's allegedly poor performance during the October busy season, as well as the charge that she got along poorly with her fellow employees, is a legitimate, non-discriminatory justification of the timing of her termination."); Carballo v. Log Cabin Smokehouse, 399 F. Supp. 2d 715, 724 (M.D. La. 2005) ("Log Cabin argues that it fired Carballo for a legitimate, non-retaliatory reason: she had a history of emotional outbursts and a poor attitude. The Court finds that Log Cabin has met its burden of production.").

Because Lowes came forward with a legitimate reason for Henderson's termination, the burden shifted to Henderson to demonstrate that Lowes' reason was merely pretextual. See McCoy, 492 F.3d at 557. However, Henderson failed to produce any evidence of racial discrimination at all, let alone refute Lowes' rationale. Thus, Henderson failed to meet his burden, and Lowes is entitled to judgment as a matter of law. See Mackey v. Enventives, L.L.C., 802 F. App'x 835, 837 (5th Cir. 2020). Thus, Lowes' unopposed Motion for Summary Judgment is **GRANTED** as to the race discrimination claim.

### b. Racial harassment claim

Lowes next argues that Henderson's racial harassment claim should be dismissed for two reasons: (1) Henderson did not experience severe or pervasive harassment; and (2) Henderson did not take advantage of the remedial measures provided by Lowes to report harassment. See Record Document 29-8 at 13. To establish a claim of hostile work environment on the basis of race, a plaintiff must demonstrate that he: "(1) belongs to a protected class; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).

This Court agrees that the uncontroverted summary judgment evidence put forth by Lowes, even when viewed in the light most favorable to Henderson, establishes that Henderson cannot meet all elements of a hostile work environment claim. First, Henderson admitted that he did not experience any racial comments in the workplace, and he never complained of racial animus in any of his general complaints to the Ethics Line. See Record Document 29-8 at 13–14. The complaints of "nit picking" and changing Henderson's work schedule cannot rise to the level of severe and pervasive racial harassment necessary to state a claim here. See Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div., 512 F.3d 157, 163 (5th Cir. 2007) (noting that the complained of conduct must be sufficiently severe or pervasive such that it alters the conditions of the plaintiff's employment and creates an abusive working environment). Further, as Lowes points out in its motion, Henderson merely speculated that Messina felt ill will towards

Henderson based on race: "It could have been anything. I cannot say specific." See Record Document 29-8 at 14. Thus, there is simply no evidence of the type of severe and pervasive racial animus necessary to establish a hostile work environment claim.

Further, as Lowes states in its motion, Henderson never reported any racial conduct, despite filing complaints with the Lowes Ethics Line at least five times. See id. at 15. The Fifth Circuit generally requires an aggrieved employee to promptly report harassment in order to later state a claim against the employer. See, for e.g., Casiano v. AT&T Corp., 213 F.3d 278, 281–282 (5th Cir. 2000); Nguyen v. Baker Hughes Inc., 115 Fed. Appx. 188, 189 (5th Cir. 2004). Thus, where an employee fails to take advantage of any reporting mechanisms provided by the employer, the harassment claim fails. See Giddens v. Community Educ. Centers, Inc., 540 Fed. Appx. 381, 389 (5th Cir. 2013). Thus, because Henderson cannot meet at least two of the elements of a hostile work environment claim, and has not come forward with any evidence to refute Lowes' contentions, the Motion for Summary Judgment is **GRANTED** as to the racial harassment claim.

### c. Age discrimination claim

Lowes next argues that Henderson's age discrimination claim must fail for the same reason that the race discrimination claim failed: Lowes came forward with a legitimate, non-discriminatory reason for terminating Henderson, and Henderson failed to rebut that reason. See Record Document 29-8 at 16. Henderson asserted in his EEOC Charge that he was removed from the work schedule and terminated because of his age (forty-six, according to Lowes' records). See id. at 17. However, Lowes argues that even

if Henderson could establish a *prima facie* claim of age discrimination, Henderson has not been able to overcome Lowes' legitimate reason for the termination. See id.

This Court agrees with Lowes and finds that, for the same reasons discussed above, Lowes produced a legitimate, non-discriminatory reason for Henderson's termination. Just as in a case of racial discrimination, where a plaintiff establishes a *prima facie* case, the employer may rebut the plaintiff's case with a legitimate reason for the employment decision. See Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010). After the employer comes forward with a legitimate reason, the burden shifts to the plaintiff to present evidence to rebut that reason. See id. This Henderson did not do. Even if his Complaint set forth a valid *prima facie* case of age discrimination, Lowes provided a legitimate, non-discriminatory reason for the termination, and Henderson failed to present any evidence that that reason was pretextual. Thus, the Motion for Summary Judgment is **GRANTED** as to the age discrimination claim.

### d. Retaliation claim

In its Motion for Summary Judgment, Lowes interpreted Henderson's complaint as raising a Title VII retaliation claim as well. See Record Document 29-8 at 20. "To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy, 492 F.3d at 556–57. Again, as in the above causes of action, an employer may come forward with a legitimate, non-discriminatory reason for the employment action, which the plaintiff must rebut with evidence of pretext. See id.

Lowes argues that Henderson cannot establish a *prima facie* case of retaliation because Henderson did not engage in statutorily protected activity under Title VII, primarily because Henderson did not mention race or age in any of his complaints to Lowes. See Record Document 29-8 at 21. Henderson made a remark that he was treated differently because of his previous workers' compensation injury, but that is not protected under Title VII. See Jimenez v. Potter, 211 F. App'x 289, 290 (5th Cir. 2006) ("[A] workers' compensation claim is not a protected activity under Title VII."). Further, Lowes argues that Henderson cannot establish a causal connection between his complaints to the Ethics Line and his ultimate termination. See Record Document 29-8 at 21. In fact, as Lowes points out, Henderson's initial January 2019 report occurred over a year and a half before the meeting with Williams and McCullars that led to his termination. See id.

This Court agrees that Henderson has not made a *prima facie* showing of retaliation on behalf of Lowes. Further, as noted above, Lowes had a legitimate non-discriminatory reason for the termination, which Henderson did not rebut. Thus, the unopposed Motion for Summary Judgment is **GRANTED** as to the Title VII retaliation claim.

    **e. Workers' compensation claim**

Lastly, Lowes argues that, to the extent Henderson's Complaint can be read to assert a workers' compensation claim, such a claim is untimely, and thus must be dismissed. See id. at 22. "As a delictual action, an action for retaliatory discharge under LSA–R.S. 23:1361 is governed by the one-year prescription of LSA–C.C. Art. 3492, and prescribes one year from the date of discharge." Maquar v. Transit Mgmt. of Se. Louisiana, Inc., 593 So.2d 365, 367 (La. 1992). Here, Henderson was terminated on July

11

8, 2020 and did not file suit until August 16, 2021. See Record Document 29-8 at 22. This Court thus agrees with Lowes that this claim is prescribed, and thus, the Motion for Summary Judgment is **GRANTED** as to the workers' compensation retaliation claim.

## CONCLUSION

Based on the reasons explained above,

**IT IS ORDERED** that Lowes' Motion for Summary Judgment (Record Document 29) is **GRANTED**. All claims filed by Henderson against Lowes are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this ruling shall issue forthwith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 15th day of February, 2023.

                                              S. MAURICE HICKS, JR., DISTRICT JUDGE
                                                   UNITED STATES DISTRICT COURT